## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAWRENCE GAINES** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **NO. 20-361** |
| | **:** | |
| **RICHARD MARSH,** *et al.* | **:** | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                            **April 30, 2021**

We granted Lawrence Gaines's habeas petition last month finding the failure of Mr. Gaines's trial counsel to request a "no adverse inference" jury instruction both during the trial court's charging conference and after the charge without consulting Mr. Gaines fundamentally altered the jury's consideration of homicide offenses in light of his viable self-defense theories and absent overwhelming evidence of intent. We found trial counsel's failure to be highly prejudicial given the alternative levels of lesser included offenses to first degree murder. Mr. Gaines's post-conviction counsel also admitted missing the issue depriving Mr. Gaines of the ability to timely raise this concern in Post Conviction Relief Act proceedings.

The Northampton County District Attorney now moves to supplement the record to include a transcript of voir dire the County failed to produce in response to our March 12, 2020 Order to do so and failed to mention in preparing for, and examining witnesses during, our evidentiary hearing on this issue alone. The District Attorney also moves to alter or amend our findings and/or judgment under Federal Rules of Civil Procedure 52(b) and 59(e) based on the transcript from the voir dire in the May 2013 trial produced earlier this month.

We find no basis to supplement the record with a transcript of voir dire produced under curious circumstances in April 2021 after our March 24, 2021 Order and extensive Memorandum.

The Commonwealth admittedly knew, or most certainly should have known, of the existence of this transcript. It did not produce the transcript in response to our March 12, 2020 Order. It did not argue anything from the voir dire in its briefing nor did it adduce evidence from the witnesses during our evidentiary hearing on this issue. It cannot get a "do-over" by adding evidence always available to it.

But the absence of the voir dire transcript supplementing the record does not automatically require we must deny the Commonwealth's motion to amend or alter our March 24, 2021 judgment. There is no dispute the state trial judge commented on the "no adverse inference" in response to questioning of one prospective juror during voir dire apparently involving dozens of citizens. We find the trial judge's statement responsive to one potential juror's question during voir dire—without another mention of the "no adverse inference" instruction during or after trial—does not cure trial counsel's constitutionally ineffective assistance in this close case asserting a viable self-defense theory responsive to several different levels of homicide charges where trial counsel repeatedly assured both the trial court and Mr. Gaines he would ask for the "no adverse instruction" if Mr. Gaines elected to not testify. Mr. Gaines elected to not testify. His trial counsel decided to not ask for the instruction without consulting him. The Commonwealth does not offer grounds to alter or amend our finding of constitutional ineffectiveness of Mr. Gaines's trial and post-conviction counsel under *Strickland v. Washington*. We deny the District Attorney's motions to supplement the record and to alter or amend our findings or judgment.

## I.    Facts

The Commonwealth charged Lawrence Gaines with criminal homicide and first-degree murder for the July 2012 stabbing death of William "Poncho" Thompson after Poncho hit Mr. Gaines from behind with a stick.[1] Trial began on May 6, 2013. Mr. Gaines admittedly stabbed

Poncho but contended he did so in self-defense. Mr. Gaines's trial counsel, Attorney Robert Sletvold, presented a self-defense theory in his opening and closing arguments and sought to demonstrate at trial Mr. Gaines's justified use of force. He further sought to demonstrate Mr. Gaines had no duty to retreat and had a right to stand his ground and use deadly force because Poncho used a weapon readily or apparently capable of lethal use under Pennsylvania law. Attorney Sletvold planned to bring out the self-defense theory through eyewitness Tony Williams. Attorney Sletvold put on no witnesses and Mr. Gaines did not testify at trial.

### *Transcript of the first day of trial and voir dire initially produced to us as part of the certified state court record.*

Trial began on Monday, May 6, 2013. Before voir dire, the trial court took Mr. Gaines's plea of not guilty and addressed preliminary matters with counsel.[2] The trial court then took a recess awaiting the panel's completion of jury questionnaires.[3]

The parties and trial court then began jury selection from an unknown number of persons in the venire, although we know one potential juror is identified as Juror #55. The court reporter recorded, but did not transcribe, the voir dire. She filed the certified transcript with the Northampton County Court of Common Pleas on May 22, 2013 confirming: "(A recess was taken.) (Whereupon, voir dire was conducted but not transcribed.)"[4]

Counsel then selected the persons for the jury. The trial court gave preliminary instructions to the selected jurors.[5] The trial court did not include a "no adverse inference" instruction in his preliminary instructions.

### *The jury convicts Mr. Gaines of first-degree murder after receiving jury instructions without a "no adverse inference" instruction.*

As fully explained in our March 24, 2021 memorandum, there is no question Attorney Sletvold requested a "no adverse inference" instruction during trial and the trial court told Mr.

Gaines a "no adverse inference" instruction would be given to the jury but Attorney Sletvold failed to request the instruction at the charging conference or after the close of instructions. There is no dispute Attorney Sletvold failed to discuss with Mr. Gaines a waiver of such an instruction. The jury convicted Mr. Gaines of first-degree murder.

Attorney Sletvold filed a direct appeal and, on July 1, 2013, requested the official court reporter to "produce, certify, and file" the transcripts from the trial and sentencing from May 6 through May 9, 2013.

### *Mr. Gaines's habeas petition and our evidentiary hearing.*

After an unsuccessful direct appeal and unsuccessful petition for post-conviction relief (neither of which raised the absence of a "no adverse inference" instruction), Mr. Gaines pro se petitioned for habeas relief. Mr. Gaines raised, among other grounds, Attorney Sletvold's ineffectiveness for failing to request a "no adverse inference" jury instruction and his post-conviction counsel's ineffectiveness for failing to raise the issue.

On March 12, 2020, we ordered the Northampton County Clerk of Courts to file "ALL RECORDS, INCLUDING, transcripts of Notes of Testimony at Arraignment, Trial, Sentencing, Suppression Hearings, Post-Convictions Hearings, . . ."[6] The Northampton County Clerk of Courts responded by providing us with transcripts, including the first day of trial on May 6, 2013 certified by the official court reporter, and filed May 22, 2013, noting she did not transcribe the voir dire. By mid-May 2013, all parties knew the court reporter did not transcribe the voir dire.

After studying the briefs and state court record, we became troubled by the trial transcript showing the trial court, counsel, and Mr. Gaines all discussed and expected Attorney Sletvold would request a "no adverse inference" instruction to the jury and the trial judge promised to give the instruction if asked. So, we scheduled an evidentiary hearing <u>solely</u> to evaluate witness

4

credibility as to why Attorney Sletvold did not request such an instruction in the charging conference or object when offered a chance to do so. Attorney Sletvold, Attorney Matthew Deschler (Mr. Gaines's post-conviction counsel), and Mr. Gaines testified at the March 15, 2021 evidentiary hearing.

Counsel for Mr. Gaines and the Assistant District Attorney for Northampton County examined each witness. At no time did the Assistant District Attorney mention a disclosure during jury selection. The Assistant District Attorney focused her questioning on Attorney Sletvold's claimed strategic reasons for not requesting a "no adverse inference" instruction either in the charging conference or at the conclusion of the jury charge. No one mentioned a statement made during voir dire nor could we imagine how anyone presently in the case would know other than Attorney Sletvold, who never mentioned it even though it may have been in his interest to do so.

*The Commonwealth suddenly finds a transcript of voir dire.*

We granted Mr. Gaines's habeas petition on the "no adverse inference" instruction issue on March 24, 2021 with an extensive supporting memorandum.[7] Our memorandum explained the absence of any such instruction at trial constituted ineffectiveness of counsel and prejudiced Mr. Gaines.

The District Attorney then moved to supplement the record and separately moved to alter or amend our judgment.[8] The District Attorney attached a previously undisclosed transcript of voir dire which it "obtained" on April 5, 2021 representing "the Notes of Voir Dire transcript" from the first day of trial.[9] The District Attorney concedes the transcript from voir dire is "technically always part of the trial record" but omitted from the record through mistake and error. [10] The District Attorney further admits the Commonwealth did not allow us to consider this transcript throughout the habeas proceedings even though we ordered it to produce ALL RECORDS.

The District Attorney asks we alter or amend our findings and/or judgment based on the following exchange during jury selection on May 6, 2013:

> **Attorney Sletvold**: . . . Is there anyone here that would have trouble following the law as Judge Smith gives it to you? Does anyone have a problem with that? Number 3.
>
> **Juror Number 3**: Can I ask a question?
>
> **Attorney Sletvold**: In what respect? Let me follow-up. In what respect would you have trouble following?
>
> **Juror Number 3**: Well, on the questionnaire it asked about, and you just brought it up, about him not having to testify. In my way of thinking, if I were –
>
> **The Court**: Stop right there. Let me interrupt, Mr. Sletvold. One of the most fundamental principles of the Pennsylvania constitution is that when someone is accused of a crime, he does not have to testify; does not have to be called upon to defend themselves. Rather, the burden is on the Commonwealth to prove that they're guilty and that proof must be beyond a reasonable doubt. **That is such a fundamental constitutional principle that it is absolutely imperative as the jury in this matter you can accept that principle and if you have no adverse inference from the decision of the defendant to remain silent.** There can be a variety of reasons why a defendant may not choose to take the stand. But regardless of the reason, you must be able to accept that principle of our law dating back to our founders that the defendant has an absolute right to remain silent. **If you cannot accept that law and if you're likely to infer anything adverse to the defendant, you cannot be a juror in this matter.**
>
> Now, can you accept that principle that a defendant has an absolute right to remain silent and not infer anything negative if he does not take the stand during this trial?
>
> **Juror Number 3**: I think so.
>
> **The Court**: Is there anyone else that has a problem accepting that principle? If so, please raise your number. And there is no response. Excuse my interpretation.[11]

Mr. Gaines does not dispute the accuracy of this question and answer.

### *The Commonwealth's shifting reasons for not producing the transcript.*

Concerned with the sudden production of a transcript the Commonwealth had access to for almost eight years but never referenced, we twice ordered the District Attorney to explain "the ordering and production of the May 6, 2013 transcript of voir dire and the reasons for failing to

produce this court-ordered information under our March 12, 2020 Order . . ."[12] The Commonwealth blames several parties but avoids addressing its central failure.

Attorney Leigh Ann Fisher, the Northampton County Clerk of Court in the Criminal Division, swore Attorney Sletvold requested transcripts on July 1, 2013 from the trial and sentencing held May 6 through May 9, 2013.[13] Clerk Fisher swears "[n]o Order of Court exists in the Criminal Division disposing of Attorney Sletvold's Request for Transcripts or any other motion for transcripts" and her office "does not have any supervisory authority over Court Reporters with respect to the transcription of testimony from court proceedings."[14] Clerk Fisher then swears her office sent all filed documents, including any transcripts, to our Clerk of Court on March 24, 2020 in response to our March 12, 2020 Order requesting the state court record for review of Mr. Gaines's habeas petition.[15]

The official court reporter with over thirty years' experience, Karen A. Mengel, swore it is the practice in Northampton County to record all voir dire. When she filed the transcript in May 2013, she put in the record "voir dire conducted but not transcribed" as a placeholder to "provid[e] the reader knowledge that, in fact, the notes exist and could be transcribed at a later date."[16] She swears she did not transcribe voir dire because Attorney Sletvold did not request it and there is no requirement she transcribe voir dire.[17] Reporter Mengel swears she did not transcribe voir dire until the District Attorney contacted her to do so in late March or early April 2021.[18] Reporter Mengel filed the transcript of voir dire on April 15, 2021.[19]

The District Attorney also blames Attorney Sletvold.[20] She contends Mr. Gaines is responsible "as the appellant" to ensure the record on appeal is complete as required by the Pennsylvania Rules of Appellate Procedure. The Commonwealth argues because Attorney Sletvold never ensured the state trial court included all transcripts, including the transcript from

voir dire, in the certified record during his state court appeal, the court reporter never transcribed

voir dire and the state court did not include it in the certified record at the time the District Attorney

answered the habeas petition in October 2020.

The Commonwealth explains it was not until after it received our March 24, 2021

Memorandum and Order, when it began preparing an appeal, did the District Attorney again

contact Reporter Mengel to "double check" the contents of the certified record.[21] The

Commonwealth claims the District Attorney only received a copy of voir dire for the first time

earlier this month.

## II.    Analysis

We consider the Commonwealth's Motions (1) to supplement the record under Federal

Rule of Appellate Procedure 10(e)(2)(B);[22] and (2) to alter or amend our findings and/or judgment

of our March 24, 2021 Memorandum and Order under Federal Rules of Civil Procedure 52(b) and

59(e).[23] We deny the motion to supplement. But we must consider the trial judge's undisputed

response to a question from a prospective juror presumably (for purposes of our analysis) heard

by dozens of citizens gathered for jury selection. The issue then becomes whether this response to

a question during voir dire cures the attorneys' constitutionally ineffective assistance of counsel.

The Commonwealth offers no authority suggesting this one statement made in voir dire alone can

cure the ineffectiveness particularly in a case without overwhelming evidence given the substantial

self-defense evidence. We cannot find this one statement cures the prejudice to Mr. Gaines and

deny the Commonwealth's motion to alter the judgment.

### A.    We deny the Commonwealth's Motion to supplement the record under Federal Rule of Appellate Procedure 10(e)(2)(B).

The Commonwealth moves to supplement the record before us under Federal Rule of

Appellate Procedure 10 governing the record *on appeal*. As a threshold matter, the Rules of

Appellate Procedure "govern procedure in the United States courts of appeals."[24] The Commonwealth did not appeal and we cannot perceive how this Rule of Appellate Procedure applies at this time. But even if the Rules of Appellate Procedure apply, and we do not believe they do at this juncture, Rule 10 does not apply in the manner the Commonwealth seeks to employ it.

The Commonwealth asks us to supplement the record under Rule 10(e)(2)(B) — after our March 24, 2021 final decision granting habeas relief to Mr. Gaines — to consider a voir dire transcript never produced to us. Rule 10(e) allows for the "correction or modification of the record" on appeal: "If any difference arises about ***whether the record truly discloses what occurred in the district court***, the difference must be submitted to and settled by that court and the record conformed accordingly."[25] Under Rule 10(e)(2), "If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded: (A) on stipulation of the parties; (B) by the district court before or after the record has been forwarded; or (C) by the court of appeals."[26]

The Commonwealth misunderstands the purpose of Rule 10(e)(2)(B). "The purpose of Appellate Rule 10(e) is to ensure that the record on appeal accurately reflects proceedings in the trial court, and therefore to facilitate the appellate court's ability to review the trial court decision ***in light of information that was actually before the trial court***, ***and not to enable the losing party to merely add new material to the record in order to collaterally attack the trial court's decision***."[27] Rule 10(e)(2)(B) does not allow us to supplement the record on appeal to add the voir dire transcript never before us and, consequently, not considered by us at the time of our March 24, 2021 decision.[28]

The Commonwealth argues the record should be supplemented because omission of the voir dire transcript was a mistake; the trial court's instruction in voir dire is a matter of fact although not previously transcribed; and exceptional circumstances exist because this is a habeas case. It cites several cases in support of its argument.

The District Attorney cites a 1942 case from the United States Court of Appeals for the Eighth Circuit in support of its argument Rule 10(e) allows supplementation of the record to cure a mistake.[29] In *McLean*, a non-habeas case, the court of appeals allowed a party to supplement the record by adding proceedings from a state probate court omitted "by mistake" under Federal Rule of Civil Procedure 75(h).[30] Federal Rule of Civil Procedure 75(h), abrogated in 1967 and, after revision, abrogated again in 1997, pertained to proceedings on appeal from a magistrate judge to the district court. The case did not apply Federal Rule of Appellate Procedure 10(e) and is inapplicable.

The District Attorney also cites *Moore v. United States* from over fifty years ago in support of its argument Rule 10(e) allows supplementation of the record to include factual material not included in the original record.[31] *Moore* is distinguishable. Mr. Moore filed a section 2255 petition alleging his appointed counsel from the "voluntary defender's office" did not meet with him until the day of trial creating a presumption of prejudice under our Court of Appeals' precedent.[32] On the scheduled day of trial, another attorney from the voluntary defender's officer appeared for Mr. Moore and requested a postponement of trial to allow counsel to confer with Mr. Moore. After a one-day continuance, trial began and a jury convicted Mr. Moore of robbery.

Our Court of Appeals rejected Mr. Moore's argument the last-minute appointment of counsel created prejudice, overruling its precedent adopting such a presumption.[33] In the appeal, the United States moved under Rule 10(e) to supplement the record to include the transcript of the

first day of trial, continued on Mr. Moore's motion, not transcribed until five years later. Mr. Moore opposed the motion arguing the transcript did not exist at the time of his habeas petition in the district court, and consequently was not a part of the record when the district court decided his habeas petition.[34] The court rejected Mr. Moore's argument, finding "since what occurred in the district court, even though at the time unrecorded, remains a fact in the proceedings, we shall take notice of it and grant the government's motion."[35]

This factual scenario is much different than the facts in Mr. Gaines's habeas petition. In *Moore*, the trial court knew Mr. Moore's counsel first appeared the day of trial and asked for a continuance to confer with Mr. Moore, which the trial court granted, and trial started the next day. The facts did not change and the recently produced transcript confirmed facts known to the trial court. Unlike in *Moore,* no one disclosed the trial judge's response to a prospective juror's question invoking the "no adverse inference" direction. The transcript of the May 6, 2013 voir dire changes the facts as the Commonwealth admits in moving to amend or alter our March 24, 2021 Order. The transcript changes the known state of facts. We could find *Moore* persuasive if, for example, the Commonwealth argued this voir dire disclosure and Mr. Gaines conceded the disclosure before our March 24, 2021 Order. But it does not address our situation.

The District Attorney lastly argues exceptional circumstances exist here allowing us to supplement the record because this is a habeas action, citing the decision of our Court of Appeals in *Accumed LLC v. Advanced Surgical Services, Inc.* outlining three exceptional circumstances which may permit supplementation of the record on appeal.[36] Exceptional circumstances are: "(1) whether the proffered addition would establish beyond any doubt the proper resolution of the pending issue; (2) whether remanding the case to the district court for consideration of the additional material would be contrary to the interests of justice and the efficient use of judicial

resources; and (3) whether the appeal arose in the context of a habeas corpus action."[37] The court refused to find exceptional circumstances because appellant "could have produced this information in the first instance to the District Court in opposition to . . . summary judgment" but failed to do so and rejected appellant's claim of exceptional circumstances where she "fail[ed] to explain why she did not include these documents in her original submissions to the District Court" in a Motion for Reconsideration under Rule 59(e).[38]

Even in exceptional circumstances of a habeas case, we cannot today find authority suggesting our Court of Appeals would grant a motion under Rule 10(e)(2)(B) where the Commonwealth simply failed to include a transcript in the record and never relied on, or argued, the facts shown in the transcript. Again, Rule 10(e) "may not be used to supplement the record on appeal with evidence never before the district court nor considered by it in rendering its final judgment."[39] "It is a generally accepted principle that 'sloppy lawyering is not an error or accident' for the purposes of" Rule 10(e)."[40]

We still have no explanation for why the Commonwealth did not produce all transcripts in response to our March 12, 2020 Order. The Commonwealth offers evolving reasons: the Clerk of Court blames the trial court; the Court Reporter blames trial counsel; and the District Attorney blames the Court Reporter's confusion and Mr. Gaines, claiming it is his responsibility to have ensured the record in his state court direct appeal is complete.[41] Reporter Mengel, an official court reporter in Northampton County for over thirty years, swears it is the practice in Northampton County "that ALL"—her emphasis—"voir dire be on the record."[42] Despite the County's long-standing practice of recording voir dire, no one produced the transcript of it until after our March 24, 2021 Memorandum and Order. No one in the District Attorney's office attempted to reconcile the County's practice of recording voir dire with the glaring absence of a transcript, even though

everyone had a transcript noting "voir dire conducted by not transcribed." This notation in the record we all have—a prudent practice according to Reporter Mengel—is to "provide[] the reader knowledge that, in fact, the notes exist and could be transcribed at a later date."[43] No reader put two and two together here.

We deny the Commonwealth's Motion to supplement the record under Federal Rule of Appellate Procedure 10(e)(2)(B) to add this transcript which the Commonwealth knew about but elected not to timely secure and produce.

### B. We deny the Commonwealth's Motion for reconsideration.

The absence of the transcript in the record does not automatically defeat the Commonwealth's Motion for reconsideration. Mr. Gaines does not dispute the trial judge made the statement regarding "no adverse inference" in response to questioning of a prospective juror during voir dire with dozens of persons. The issue becomes whether this undisputed disclosure cures the constitutionally ineffective assistance of counsel. We find it does not.

### 1. The Commonwealth does not meet its burden to alter or amend.

Rule 52(b) "permits [a party] to ask the court to correct, on the non-jury record before it, any errors of law, mistakes of fact or oversights that require correction."[44] "Rule 52(b) motions are often accompanied by, or brought simultaneously with, Rule 59(e) motions to amend the judgment."[45] The purpose of Rule 52(b) is to allow the district court to "correct manifest errors of law, or in limited circumstances, to present newly discovered evidence."[46] Rule 52(b) "is not meant to provide an avenue for relitigating issues on which the moving party did not prevail at trial" and may not be used to "amend the findings to advance new theories or secure a rehearing on the merits."[47] The standard is similar to a motion for reconsideration or to alter judgment under Rule

59(e). The decision to grant or deny a motion to amend findings under Rule 52(b) is within our discretion.[48]

Rule 59(e) allows us to alter, or reconsider, our judgment "if the party seeking reconsideration shows . . . : '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . .; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'"[49] Motions for reconsideration are granted sparingly.[50]

The Commonwealth does not assert an intervening change in the controlling law. It skirts around the "new evidence" prong, but that is inapplicable here. "New evidence" is "evidence that a party could not earlier submit to the court because that evidence was not previously available."[51] The transcript of the voir dire could have, and should have, been available to the Commonwealth.

The Commonwealth focuses on the "need to correct a clear error of . . . fact or to prevent manifest injustice" prong. To show clear error of law or fact or manifest injustice, "a party 'must base its motion on arguments that were previously raised but were overlooked by the court.'"[52] Our Court of Appeals "never adopted strict or precise definitions for 'clear error of law or fact' and 'manifest injustice' in the context of a motion for reconsideration" but suggested "there is substantial, if not complete, overlap between the two concepts."[53] The "focus is on the gravity and the overtness of the error" and the Commonwealth must show we "committed a 'direct, obvious, [or] observable error' . . . and one that is of at least some importance to the larger proceedings."[54]

In response to Mr. Gaines's habeas petition, the Commonwealth argued the trial court gave several instructions, which when considered as a whole, essentially constitute the "no adverse inference" instruction. We rejected that argument in our March 24, 2021 Memorandum.

The Commonwealth now advances a new argument – the trial court gave a "no adverse inference" instruction to the dozens of citizens during voir dire. But to make this new argument, the Commonwealth asks us to correct *its error* in failing to produce the voir dire transcript we ordered it to produce in March 2020, not our error.

We considered the parties' briefing and evaluated the credibility of witnesses during our evidentiary hearing on the "no adverse inference" instruction issue. The Commonwealth fails to show an error of fact or manifest injustice caused by its unexplained failure to produce the transcript of voir dire. The Commonwealth fails to meet its burden under Rule 52(b) or Rule 59(e).

### 2. The undisputed statement during voir dire does not change our decision.

But Mr. Gaines does not dispute the trial judge made a statement like a "no adverse inference" instruction to the dozens of citizens gathered for jury selection. We still have no basis to change our decision.

Under Pennsylvania law, an adverse inference instruction must "accurately reflec[t] the important legal maxim that silence is not evidence of guilt; the charge is not required; however, once a defendant has expressed a clear intent to either include or exclude the charge that intent must be carried out."[55] Under federal law, a trial court must give a "no adverse inference" jury instruction when requested by defendant.[56]

There is no dispute the trial court did not give a "no adverse inference" instruction to the jury. The District Attorney has not shown, and we cannot locate, authority for the proposition such an instruction given to the dozens of citizens in the venire during jury selection is constitutionally effective. There is no dispute Attorney Sletvold requested the instruction during trial and the trial court advised Mr. Gaines the instruction would be given.[57] There is no dispute the trial court explained to Mr. Gaines he has an absolute right not to testify and affirmed he would give the

instruction.[58] The transcript reflects the trial court told Mr. Gaines: "And Mr. Sletvold also indicated that he wishes me to instruct the jury that the jury can draw no adverse inference from your decision to remain silent. Do you understand that?"[59] The trial court did not give the instruction.

We concluded a month ago Attorney Sletvold's failure to request the "no adverse inference" instruction at both the charging conference and after the trial court instructed the jury and asked counsel for any objections to the instructions, constituted ineffectiveness under the performance prong of *Strickland v. Washington*.[60] We analyzed *Strickland's* prejudice prong applying a harmless error standard.[61] We concluded the failure to instruct the jury under the facts of Mr. Gaines's case is not harmless. We explained Mr. Gaines's state of mind during his altercation with Poncho could materially affect the jury's evaluation of his self-defense theories and the jury's consideration of the lesser included offenses on which the trial court instructed it— third-degree murder, voluntary and involuntary manslaughter—offenses with significantly less incarceration time. We highlighted our particular concern Mr. Gaines's testimony is vital to the nature of the defense asserted and his choice not to testify would heighten the jury's awareness of his failure to testify.[62] We also found the evidence at trial not so overwhelming on a first-degree murder charge, explaining the Commonwealth is required to prove specific intent to kill or malice as an element. The evidence showed a fight between Mr. Gaines and Poncho with Poncho returning to fight with a stick hitting Mr. Gaines from behind, and with only Mr. Williams's testimony, "the line between first-degree murder and third-degree murder is not overwhelming as argued by the Commonwealth."[63]

The facts of Mr. Gaines's case are different from those in *Young v. Folino*[64] and *Howard v. Horn*.[65] In those cases, Judge Robreno affirmed the state courts' finding of no prejudice where

the trial court gave a "no adverse inference" instruction in a voir dire and preliminary instructions and where the weight of the evidence would not have made a difference in the jury's verdict. We reject the Commonwealth's argument we must reconsider our extensive post-hearing reasoning because we contrasted the *Young* and *Howard* cases—where a "no adverse inference" instruction had been given during preliminary instructions—with Mr. Gaines's case where the trial court never gave such an instruction.[66] The Commonwealth argues the transcript of voir dire showing a "no adverse inference" instruction given to dozens of citizens requires we change our mind and follow Judge Robreno's reasoning in *Young* and *Howard*.

But even considering the instruction given during voir dire, the fact remains Attorney Sletvold asked for a "no adverse inference" instruction; the trial court affirmed it would give such an instruction; Attorney Sletvold failed to request the instruction at the charging conference and at the close of the charge; Attorney Sletvold explained he had a strategic reason for failing to object but never consulted with Mr. Gaines; and the evidence—unlike faced by Judge Robreno in *Young* and *Howard*—does not overwhelmingly support a first-degree murder conviction.

We deny the Commonwealth's motion for reconsideration.

## III.     Conclusion

The Commonwealth has not offered a basis to supplement the record with a transcript available to it years ago but which it failed to obtain until after our extensive analysis of the very issue raised in the transcript. It never made the arguments presented today until after we decided Mr. Gaines's habeas petition.

But the parties do not now dispute the trial judge's statements to citizens reporting to jury duty. They do dispute the trial judge told the gathered citizens they cannot, if selected as a juror, draw an adverse inference from Mr. Gaines's failure to testify. The issue then becomes whether

this singular disclosure during voir dire is enough to cure the prejudice caused by trial counsel's ineffective assistance during trial. The trial court did not give a preliminary "no adverse inference" instruction. The trial court twice told Mr. Gaines during trial it would give the "no adverse inference" instruction if he decided to not testify and if his lawyer asked for it. Mr. Gaines thereafter decided to not testify. His lawyer, without consulting with him, initially forgot to ask for the "no adverse inference" instruction and then swore he decided to not ask for the instruction even after the trial court asked him for any further instructions and he offered another one, but not this one. No one ever told the sworn jury of the "no adverse inference" instruction. Attorney Sletvold forgot to ask or decided not to ask when he realized he forgot. He never talked to Mr. Gaines about this error. The trial judge's response to a prospective juror's question during voir dire involving dozens of persons does not cure the prejudice to Mr. Gaines created by his trial counsel's ineffective assistance of counsel. We deny the Commonwealth's motion to alter or amend our March 24, 2021 Order partially granting Mr. Gaines's habeas petition.

---

[1] We detail and incorporate the facts in our March 24, 2021 memorandum granting in part and denying in part Mr. Gaines's habeas petition. *See* ECF Doc. No. 47.

[2] ECF Doc. No. 42-1 at 3-10.

[3] *Id.* at 10.

[4] *Id.* In response to our Order directing the Prothonotary of Northampton County Clerk of Courts or office of Judicial Support to file copies of all records including transcripts of Notes of Testimony (ECF Doc. No. 12), the Commonwealth submitted the transcript from May 6, 2013 (day one of trial) to us bearing the notation in the transcript by the court reporter, "voir dire was conducted but not transcribed."

[5] ECF Doc. No. 42-1 at 31-39.

[6] ECF Doc. No. 12. There is a typographical error on the date of the Order. The body of the Order is dated March 12, 2019. Mr. Gaines, however, did not petition for habeas relief until January 21, 2020. The ECF stamp on the Order is March 12, 2020.

[7] ECF Doc. No. 47.

[8] ECF Doc. Nos. 49, 50.

[9] ECF Doc. No. 49 ¶ 4.

[10] *Id.* ¶ 5; ECF Doc. No. 58

[11] ECF Doc. No. 49-1 at 70-71 (emphasis added).

[12] ECF Doc. No. 52.

[13] ECF Doc. No. 53 ¶ 4. Under Pennsylvania Rule of Civil Procedure 115(B) in effect at the time, "the trial court was responsible for determining and designating those parts of the record, if any, that are to be transcribed" on a party's motion or on the court's own motion.

[14] ECF Doc. No. 53 ¶¶ 6, 7.

[15] *Id.* ¶ 9.

[16] ECF Doc. No. 57.

[17] *Id.* Reporter Mengel blames the failure to transcribe voir dire on Attorney Sletvold, claiming he did not request voir dire to be transcribed in May 2013. She does not mention Attorney Sletvold's July 1, 2013 motion for transcripts served upon her or the claimed failure by the trial court to then act on Attorney Sletvold's motion. Attorney Sletvold asked for the transcripts. She also does not explain how, if Attorney Sletvold served on her a request to produce, certify, and file ***the transcripts*** from trial beginning May 6, 2013 through sentencing on May 9, 2013, she construed that request to mean all transcripts except for voir dire.

[18] *Id.*

[19] ECF Doc. No. 53 ¶ 11. The Northampton Court of Common Pleas docket confirms a state court judge, apparently without notice or a motion (which may not be required under local practice), filed a "Certificate and Transmittal of Record to Appellate Court" on April 14, 2021.

[20] ECF Doc. No. 58.

[21] *Id.* at 2.

[22] ECF Doc. No. 49.

[23] ECF Doc. No. 50.

[24] Fed. R. App. P. 1(a)(1). *See Dooley v. Tice,* No. 17-4315, 2019 WL 6771732, at *1 (E.D. Pa. Dec. 12, 2019) (Rule 10(e)(2)(B) permits a district court to correct an omission or misstatement of the district court record and forward a certified supplemental record for use on appeal and because movant's case remained pending in the district court, Rule 10(e)(2)(B) is inapplicable).

[25] Fed. R. App. P. 10(e)(1) (emphasis added).

[26] Fed. R. App. P. 10(e)(2)(B).

[27] 3 Moore's Manual-Federal Procedure § 28.15[4] (emphasis added)*; see also In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 96-97 (3d Cir. 1990) (Rule 10(e) prohibits the court of appeals "from adding to the record anything the district court has not considered"); *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1165 (3d Cir. 1986) ("It is well-settled that the purpose of Rule 10(e) is not to allow a district court 'to add to the record on appeal matters that do not occur there in the course of proceedings leading to the judgment under review.'") (citations omitted).

[28] *Fassett*, 807 F.2d at 1165.

[29] *McLean v. Fed. Land Bank of Omaha*, 130 F.2d 123 (8th Cir. 1942).

[30] *Id.* at 128.

[31] 432 F.2d 730 (3d Cir. 1970).

[32] *Id.* at 732.

[33] *Id*. at 735.

[34] *Id.* at 732 n. 4.

[35] *Id.*

[36] 561 F.3d 199 (3d Cir. 2009).

[37] *Id.* at 226 (citing *In re Capital Cities*, 913 F.2d at 97).

[38] *Id.*; *see also Beberman v. Sec'y United States Dep't of State*, 789 F. App'x 354, 355 n.4 (3d Cir. 2020) (denying motion to supplement appendix on appeal); *Kennedy v. American Airlines Inc.*, 760 F. App'x 136, 141-42 (3d Cir. 2019) (denying motion to supplement the record); *M.M. v. Paterson Bd. of Educ.*, 736 F. App'x 317, 321 (3d Cir. 2018) (same). Our Court of Appeals again rejected a claim of exceptional circumstances in *Burton v. Teleflex Inc.*, a non-habeas case. 707 F.3d 417 (3d Cir. 2013). There, the appellant sought to supplement the record with an affidavit and email to correct claimed errors of fact committed by the district court. *Id.* at 436. The court

refused to find exceptional circumstances because appellant "could have produced this information in the first instance to the District Court in opposition to . . . summary judgment" but failed to do so and rejected appellant's claim of exceptional circumstances where she "fail[ed] to explain why she did not include these documents in her original submissions to the District Court" in a Motion for Reconsideration under Rule 59(e).

[39] *Rivas v. Prospero Equip. Corp.*, No. 17-3028, 2018 WL 4252620, at *8 (citing *United States ex rel. Mulvaney v. Rush*, 487 F.2d 684, 687 (3d Cir. 1973)).

[40] *Id.* at *11 (collecting cases).

[41] Under Rule 5 of the Rules Governing Section 2254 cases, the **District Attorney** as the respondent is responsible in its answer to the habeas petition to "indicate what transcripts (of pretrial, trial, sentencing, or post-conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed." The District Attorney must attach to its answer "parts of the transcript that [it] considers relevant." Rules Governing § 2254 Cases, Rule 5(c). The Commonwealth fails to explain how Mr. Gaines's failure to order all transcripts in his direct appeal in state court vitiates the Commonwealth's responsibility to respond to our March 12, 2020 Order.

[42] ECF Doc. No. 57 at 2.

[43] *Id.*

[44] *Adkins v. Sogliuzzo*, 820 F. App'x 146, 149 (3d Cir. 2020) (quoting *U.S. Gypsum Co. v. Schiavo Bros., Inc*., 668 F.2d 172, 180 (3d Cir. 1981)). Rule 52(b) provides: "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings--or make additional findings--and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59."

[45] 9 James Wm. Moore et al., Moore's Federal Practice - Civil § 52.60[1] (2021).

[46] *Gutierrez v. Gonzales*, 125 F. App'x 406, 417 (3d Cir. 2005) (citation omitted).

[47] 9 Moore's Federal Practice – Civil at §52.60[3].

[48] *Id.* at § 52.60[2].

[49] *Id.* (quoting *In re Vehicle Carrier Servs. Antitrust Litig*., 846 F.3d 71, 87 (3d Cir. 2017), as amended (Jan. 25, 2017) (second omission in original)). Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

[50] *Anderson v. Pennsylvania*, No. 20-4424, 2021 WL 1253542, at *1 (E.D.Pa. Apr. 5, 2021) (*quoting Continental Cas. Co. v. Diversified Indus., Inc*., 884 F. Supp. 937, 943 (E.D. Pa. 1995)).

[51] *Howard Hess Dental Laboratories Inc. v. Dentsply Int'l, Inc*., 602 F.3d 237, 252 (3d Cir. 2010)).

[52] *Hirtle Callaghan Holdings v. Thompson*, No. 18-2322, 2021 WL 1163739, at *3 (E.D.Pa. Mar. 26, 2021) (quoting *United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003)).

[53] *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311-12 (3d Cir. 2018).

[54] *Id.* (quoting *Manifest Injustice*, Black's Law Dictionary (10th ed. 2014)).

[55] *Commonwealth v. Thompson*, 674 A.2d 217, 221 (Pa. 1996).

[56] *Carter v. Kentucky*, 450 U.S. 288, 305 (1981).

[57] *See* ECF Doc. No. 47 at 14-15 (citing N.T. May 8, 2013 at 20–21, 78).

[58] *Id.*

[59] *Id.*

[60] 466 U.S. 668 (1984).

[61] We analyzed prejudice to Mr. Gaines in our March 24, 2021 Memorandum under the harmless error standard. *See* ECF Doc. No. 47 at 31-38. We concluded Attorney Sletvold's failure to request the "no adverse inference" instruction at the charging conference or when given the opportunity by the trial court to object at the close of the charge is not harmless. The District Attorney's reply brief argues Mr. Gaines applied the wrong standard, having argued per se prejudice rather than harmless error. The District Attorney argues Mr. Gaines failed to show harmless error given the transcript showing an instruction at voir dire. ECF Doc. No. 58 at 5-9. The District Attorney does not assert we applied the wrong standard; it asks us to reconsider our finding under the harmless error standard.

[62] *See* ECF Doc. No. 47 at 37.

[63] *Id.*

[64] No. 08–2164, 2009 WL 5178302 (E.D. Pa. Dec. 23, 2009).

[65] 56 F. Supp. 3d 709, 732 (E.D. Pa. 2014).

[66] ECF Doc. No. 50 ¶ 3.